UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



MIKE WILSON, a/k/a Mahadi S. Doggett,

        Plaintiff,

v.

RAYMAND R. HAUCK, et al.[1],

        Defendants.

**DECISION AND ORDER**

6:00-CV-6458 EAW

## INTRODUCTION

Plaintiff Mike Wilson, a/k/a Mahadi S. Doggett, a former inmate of the Attica Correctional Facility, filed this action seeking relief under 42 U.S.C. § 1983, alleging violations of his Fourth and Eighth Amendment constitutional rights. (Dkt. 1 & 3). Plaintiff claims that Defendants Sergeant Raymand R. Hauck ("Hauck"), and Correctional Officers Gary J. Piesczynski ("Piesczynski"), Dale Spencer ("Spencer"), Charles T. Brew ("Brew"), James W. Holtz ("Holtz"), and Robert Hansen ("Hansen") violated his rights by use of excessive force and/or by failing to protect Plaintiff from that excessive force. (Dkt. 1 & 3). The trial of this matter is scheduled to commence on November 2, 2015. (Dkt. 126).

---

[1] The Court *sua sponte* amends the caption of this case to reflect the dismissal of Defendant Paul A. Hendel on May 27, 2014. (Dkt. 109). The Clerk of Court is directed to amend the docket in this case to reflect the amended caption.

Currently pending before the Court is Plaintiff's motion for sanctions. (Dkt. 118). Plaintiff asks the Court to order that the jury be given an adverse inference instruction based upon Defendants' alleged spoliation of evidence (namely, a videotape and photographs related to the April 30, 1999, incident). For the following reasons, Plaintiff's motion for sanctions is granted.

## BACKGROUND

Plaintiff alleges that on April 30, 1999, during the course of a cell extraction, Defendants Piesczynski, Spencer, Brew, Holtz, and Hansen assaulted him, using excessive force. Plaintiff also claims that Defendants Holtz and Hansen subjected Plaintiff to a sexual assault that caused Plaintiff physical pain and mental trauma. Additionally, Plaintiff alleges that Defendant Hauck, a superior officer, did nothing to stop or prevent the alleged assaults.

The trial of this matter was previously scheduled to commence on March 17, 2015. (Dkt. 112). Pursuant to the Pretrial Order entered on May 28, 2014 (*id.*), Plaintiff filed his motion for sanctions on February 17, 2015 (Dkt. 118). The trial date was subsequently adjourned due to Plaintiff's health issues (*see* Dkt. 122), and was rescheduled for November 2, 2015 (Dkt. 126). Defendants filed their opposition to Plaintiff's pending motion on September 24, 2015 (Dkt. 128), and Plaintiff filed a reply on September 29, 2015 (Dkt. 129).

## DISCUSSION

Plaintiff has moved for sanctions. Specifically, Plaintiff requests the jury be given an adverse inference instruction based on Defendants' alleged destruction of a videotape and several photographs.

The videotape at issue was made on a handheld video recorder the night of April 30, 1999. It shows the extraction of Plaintiff from his cell, as well as the events following that extraction (Plaintiff's placement in the shower, the strip-frisk of Plaintiff, and the photographing of Plaintiff's injuries). A copy of this videotape exists and has been viewed by the Court.

The photographs at issue are Polaroid photographs of Plaintiff's injuries taken following the cell extraction. Color copies of these photos exist and have been viewed by the Court.

The record regarding these items of evidence is somewhat confused. On May 9, 2001, Attica Correctional Facility sent Plaintiff a memorandum indicating that the videotape had "been preserved." (Dkt. 118-17 at 7). In a motion dated August 12, 2001, Plaintiff moved this Court for an order compelling Defendants to produce the original versions of both the videotapes and the photographs. (Dkt. 118-8). In opposition to Plaintiff's motion, Defendants' then-counsel submitted a sworn affidavit dated August 25, 2001, in which he stated that (1) he had the photographs in his possession and would make them available to Plaintiff immediately prior to trial, and (2) he did not oppose Plaintiff's request that the original videotape be made available for trial and would

3

"advise the correctional facility to preserve the original tape for trial." (Dkt. 118-10). On March 18, 2002, the Court entered a Decision and Order providing that "the original videotape shall be available at the trial of this action" and "[t]he original photographs are to be available at trial for Plaintiff's use." (Dkt. 118-12 at 3).

Then, almost 13 years later, on January 5, 2015, Plaintiff's counsel sent a letter to Defendants' current counsel inquiring about the original videotape. (Dkt. 118-13). On January 8, 2015, Defendants' counsel sent a letter claiming that "the original video tape was destroyed on July 20, 2000," and attaching, apparently for the first time, a letter from Attica Correctional Facility to Defendants' counsel dated April 11, 2001, stating that "the video tape was destroyed on July 20, 2000 after the prosecution case. It no longer exists." (Dkt. 118-15). On February 3, 2015, Plaintiff's counsel sent an email to Defendants' counsel asking for the originals of the photographs. (Dkt. 118-14). Defendants' counsel responded the same day with an email stating that "[w]e do not appear to have the original photographs in our file." (Dkt. 118-16).

At the final pretrial conference held on October 15, 2015, Defendants' current counsel brought with him several videotapes from his file that are marked "original." Defendants' counsel also brought several photographs, in both Polaroid and 35mm formats, that appear to depict Plaintiff after the incident on April 30, 1999. Defendants' counsel stated to the Court that he was not familiar with the provenance of these items and could not represent to the Court that they were, in fact, the original videotape and original photographs at issue on this motion. Plaintiff's counsel subsequently inspected

4

these items and set forth in detail the reasons that they are not the originals. (Dkt. 131). In sum, the record supports the conclusion that the original videotape and photographs no longer exist.

As set forth above, it is not clear from the record exactly when or how the original videotape and photographs were lost or destroyed. Although Defendants argue that the Court should conclude that the original videotape was destroyed prior to the March 18, 2002 Order requiring preservation, the Court is not inclined to credit an unsworn letter, first produced nearly 14 years after it was apparently written, over the sworn affidavit submitted by Defendants' counsel in August 2001 that indicated the original videotape and photographs still existed and would be preserved. Defendants also have not offered any explanation for how the photographs came to be lost or destroyed when the originals were in their counsel's possession in 2001. From the record before it, the Court concludes that Defendants at one point possessed the original photographs and had the ability to preserve the original videotape, yet neither has been preserved.

As the Second Circuit Court of Appeals has explained:

> [A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted). Here, Defendants argue that they did not have a duty to preserve the

5

evidence at issue because "[t]he individual defendants are not the Department of Corrections and Community Supervision" and "[a]t no time did the individual defendants possess the video or photographs." (Dkt. 128 at 3). This argument is without merit. "[E]ven where a party . . . lacks actual physical possession or custody of requested documents . . . such party may nevertheless be found to have control of the documents . . . if the party is legally entitled to the documents or has the practical ability to acquire the documents from a third-party. . . ." *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014). Courts in this district have held that the relationship between DOCCS and its employees is "sufficiently closely coordinated" to find that DOCCS employees have control over evidence held by DOCCS. *Guillory v. Skelly*, No. 12-CV-00847S(F), 2014 WL 4542468, at *8 (W.D.N.Y. Sept. 11, 2014); *see also Vigliotti v. Selsky*, No. 08-CV-00875 M, 2013 WL 3354423, at *4 (W.D.N.Y. July 3, 2013) (DOCCS employees "had sufficient nexus to DOCCS" to arrange for the inspection of prison).

Significantly, the facts of this case inarguably support the conclusion that Defendants, through their counsel, had the ability to preserve the evidence at issue. This is not a case where an unwitting individual corrections officer discovered after the fact that his employer had destroyed relevant evidence. Here, the Assistant Attorney General representing the individual Defendants stated in a sworn affidavit to this Court that he (1) had possession of the original photographs and (2) could and would instruct Attica to preserve the original videotape. These representations, made under the penalty of perjury, led to the entry of a Court order requiring Defendants to preserve the evidence

6

they now claim has been destroyed or lost. Simply put, there is no factual support in the record for Defendants' assertions that they did not have control over the evidence.

Defendants also argue that there is no evidence that they "destroyed evidence with a culpable state of mind." (Dkt. 128 at 3). Again, this argument is without merit. A culpable state of mind may be satisfied by a showing that the destruction was undertaken in bad faith, or was the result of either gross negligence or simple negligence. *Residential Funding Corp.*, 306 F.3d at 108. The record in this case amply supports a finding that Defendants were at least negligent with respect to the destruction or loss of the videotape and photographs. It is particularly troubling that despite having been ordered by the Court to preserve the originals, Defendants failed to do so. Although Defendants argue that they could not preserve the original videotape (which, for the reasons discussed above, the Court disagrees with), they have not even attempted to explain why the original photographs, which were indisputably in their counsel's possession, were not preserved.

Finally, Defendants argue that an adverse inference instruction is not warranted because copies of the videotape and photographs exist. This argument ignores the fact that Plaintiff, who viewed the original videotape and the original photographs, has consistently maintained that the existing copies are of inferior quality and fail to show the detail that was visible in the originals. Plaintiff specifically claims that in the original videotape, the inside of his cell could be seen. It is undeniable that the inside of Plaintiff's cell cannot be seen clearly in the existing copy. These purported differences

7

between the originals and the copies are sufficient to permit a reasonable trier of fact to conclude that the originals would support Plaintiff's claims. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 221 (S.D.N.Y. 2003); *cf. Twitty v. Salius*, 455 F. App'x 97, 99-100 (2d Cir. 2012) (affirming denial of adverse inference sanction where it was conceded that the differences between destroyed original videotape and existing copy were minor and "the erasure of the tape, while regrettable, did not materially prejudice the plaintiff's case").

For the foregoing reasons, the Court finds that an adverse inference instruction is warranted in this case. Prior to the trial of this matter, Defendants may submit their objections, if any, to the proposed adverse inference instruction attached to Plaintiff's Motion for Sanctions as Exhibit A. The form of the adverse inference instruction will be discussed at the charge conference.

## CONCLUSION

In sum, Plaintiff's motion for sanctions is granted and an adverse inference instruction will be given at trial.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: October 28, 2015
      Rochester, New York